T.C. Memo. 1997-103

UNITED STATES TAX COURT

LINDLEY ANTHONY SWANSTON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8261-95.            Filed February 27, 1997.

Lindley Anthony Swanston, pro se.

Charles M. Ruchelman, for respondent.

MEMORANDUM OPINION

COUVILLION, Special Trial Judge: This case was heard
pursuant to section 7443A(b)(3)[1] and Rules 180, 181, and 182.

Respondent determined a deficiency in Federal income tax of
$2,929.75 and the addition to tax under section 6651(a)(1) in the
amount of $732.43 for petitioner's 1988 tax year.

_____

[1] Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the year at issue. All Rule
references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether petitioner is entitled, under section 162(a), to cost of goods sold and deductions for trade or business expenses incurred in connection with a book-selling activity, and (2) whether petitioner is liable for the addition to tax under section 6651(a)(1).

Some of the facts were stipulated. Those facts, with the exhibits offered in connection therewith, are so found and are incorporated herein by reference. Petitioner was a resident of Silver Spring, Maryland, at the time the petition was filed.

During 1988, petitioner sold books, an activity he began sometime during 1987 following a career as a life insurance agent. Petitioner sold his books at conventions and seminars in various parts of the United States. Most of the places where petitioner sold his books were religious gatherings or conventions, and most of his books were of a religious nature; however, sometime during 1988, he began selling secular books together with the religious books. Petitioner generally rented one or more booths or exhibit spaces at each convention, where he displayed and sold his books. Petitioner did not have a fixed retail place of business. When he was not attending a convention, he stored his book inventory at home. He did not conduct any sales activity at home. Petitioner did not employ anyone, but, frequently, his wife and daughter accompanied him and assisted in his sales.

Petitioner and his wife filed a joint Federal income tax return for 1988. The return was received by the Internal Revenue Service on May 22, 1992, although the signature lines on the return bear signature dates of April 3, 1989.[2]

Petitioner filed a Schedule C, Profit or Loss From Business, with his 1988 Federal income tax return in connection with his book-selling activity. That schedule reflected the following items of income and expenses:

| | | |
|---|---|---|
| Income: | | |
| Gross receipts or sales | | $16,250 |
| Less cost of goods sold | | 9,750 |
| Gross income | | $ 6,500 |
| | | |
| Expenses: | | |
| Advertising | $1,220 | |
| Bank service charges | 145 | |
| Car and truck expenses | 3,651 | |
| Office expense | 755 | |
| Rent on business property | 1,200 | |
| Travel | 1,760 | |
| Meals and entertainment (net) | 852 | |
| Utilities and telephone | 4,230 | |
| Wages | 550 | |
| Exhibit spaces | 4,460 | |
| Total | | 18,223 |
| Net loss | | $12,323* |

* The expenses shown total $18,823 rather than $18,223 shown on petitioner's return. The $12,323 net loss is the correct figure.

---

[2] The notice of deficiency is addressed jointly to petitioner and his wife Maureen. His wife did not petition the Court, nor did she appear at trial. Petitioner referred to her at trial as his "ex-wife" and testified she was living in Florida. Their current marital status is not indicated in the record.

In the notice of deficiency, respondent disallowed the $9,750 cost of goods sold and all of the $18,823 claimed expenses for lack of substantiation.

The determinations of the Commissioner in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Petitioner produced no documentary evidence to substantiate any of the items that were disallowed by respondent. Petitioner's explanation for the failure to produce such evidence is that, in late April and early May 1989, he attended a religious convention in Richmond, Virginia. He took all his books and records with him to work on his Federal income tax return for 1988. After the Richmond convention concluded, he drove to New York, and, while he was having lunch with his sister at a Brooklyn restaurant, someone broke into his truck and took his briefcase, which contained all of his tax records. No other property in the truck was taken, although petitioner acknowledged he had books in the truck having a value of over $9,000. Upon discovery of the break-in, petitioner drove the truck a few blocks and located his briefcase, which was damaged. All of the contents were missing. For this reason, petitioner had no records to produce at trial to support his claimed expenses. When questioned by the Court, petitioner admitted he had made no

attempt to reconstruct his records, such as obtaining verifications and/or copies of receipts or certifications of transactions he engaged in with his book suppliers. Petitioner produced no bank records or statements, copies of which could have easily been obtained. The Court was not impressed with petitioner's credibility as a witness. To begin with, he produced no documentary information, such as a police report, to establish that a break-in occurred. Moreover, if petitioner is to be believed, the break-in occurred on either May 3 or 4, 1989; however, the income tax return filed by petitioner and his then wife bears signature dates of April 3, 1989, at least 1 month prior to the purported break-in. Petitioner's explanation for this was not plausible. He testified that, prior to leaving his home to attend the Richmond convention, he and his wife presigned the return on April 3, 1989, and he left the signed, blank return at home. When he returned home sometime in May 1989, after the break-in, sans records, he completed his previously signed blank return based on his "terrific memory". Left unexplained are reasons for the gap between May 1989 and the receipt of the return by the Internal Revenue Service approximately 3 years later.

Even if the Court should accept petitioner's version of what happened, there are other matters regarding the return that are questionable. For example, the Schedule C, which is handwritten,

shows several instances of numbers that are written over, which suggests to the Court that petitioner altered the numbers to attain a desired result. In juggling the numbers, he apparently forgot to correct the line totaling his expenses. That line showed total deductions of $18,223, when the correct amount was $18,823. That is not the only problem the Court has with the return. The return was a joint return, and one of the expenses claimed on the Schedule C is wages of $550. Petitioner testified that this represented a payment to his wife for services she rendered. Yet, the return fails to reflect the $550 as gross income that should have been reported because petitioner's wife was reporting jointly with petitioner. Some of the other expenses claimed on the Schedule C appear to be duplicative, particularly expenses relating to a home office. With respect to the home office, the Schedule C claimed $755 for "office expenses", $1,200 for rent on business property (on petitioner's home), and telephone and utilities of $4,230. Aside from the fact that all or some of these expenses appear to be duplicative, petitioner presented no evidence that these expenses, if paid or incurred, would be allowable under section 280A, which, in general, denies deductions with respect to the use of a dwelling unit used by the taxpayer as a residence, unless such expenses are, under section 280A(c)(1), allocable to that portion of the

dwelling used exclusively on a regular basis as "the principal place of business" of the taxpayer's trade or business.

Petitioner admitted under cross-examination that, in addition to the $12,323 Schedule C loss claimed on his 1988 return, he has never realized a net profit from his book-selling activity. He reported net losses of $17,992, $61,283, and $7,280, respectively, for 1989, 1993, and 1994. Except for small amounts of other income petitioner earned from commissions on insurance renewals, his only explanation to the Court as to how his negative cash-flow was financed was that he was on the accrual basis of accounting, and he carried his accounts on a "continuing basis". The Court is skeptical that petitioner's creditors would "carry" his unpaid accounts over the several years that he sustained losses.

Petitioner did not corroborate his testimony to support the positions he asserted. Under these circumstances, the Court is not required to, and the Court does not, accept such testimony to support petitioner's positions. See Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Mills v. Commissioner, 399 F.2d 744, 749 (4th Cir. 1968), affg. T.C. Memo. 1967-67; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Accordingly, the Court sustains respondent with respect to petitioner's Schedule C activity.

Petitioner's 1988 return was filed on May 22, 1992. Under section 6072(a), income tax returns must be filed on or before the 15th day of April following the close of the taxable year, subject to exceptions not pertinent here. Petitioner's 1988 return, therefore, should have been filed on or before April 15, 1989.

The addition to tax under section 6651(a)(1) applies where there is failure to timely file a tax return, unless it is shown that the failure to timely file is due to reasonable cause and not due to willful neglect. Petitioner presented no evidence to establish reasonable cause for the delinquent filing of his return. Respondent, therefore, is sustained on this issue.

Decision will be entered

for respondent.